Mr. Black. Your Honors, good morning. If it may please the Court, my name is Attorney Alan Black from Northampton, Massachusetts, and I'm representing Mr. Rojas. This issue just involves three items that were in closing argument, and it's a fairly narrow issue. I believe the prosecutor conceded error, so then the issue really what we have here is whether it's harmless or not. And I think it amounts to that. Two of the issues involve a closing argument, a statement made in closing argument, and one issue was actual playing of a physical exhibit, item 731, which was not evidence. Justice Kagan But the district court instructed the jury to ignore it basically, and the government says basically the same information was before the jury anyway in legitimately admitted evidence. Justice Breyer Just to Justice Kagan Which do you, and you didn't move for mistrial on the basis of the improper comments. You did move for mistrial on the basis of the video that should, or the tape that shouldn't have been played to the jury. So which of I'd like to put them all together, but all of that is correct. The mistrial was made after 731. However, the statements were, the arguments were objected to. So I believe the errors were preserved. But the reason why, to answer your question, I'll focus on 731 because of the fact that this is an unusual, it's unusual when you look at all the other cases. Here we don't have an argument, somebody throwing an argument, and he actually played a physical tape of something. And I don't think this is exactly what the other tapes, it's true, there are a lot of evidence in this case. I would be remiss in saying otherwise, and I actually did put that in my brief. There's a lot of evidence in this case. But this is the only bit of evidence that talks about the highly sophisticated nature and the amount of knowledge this person has about drugs in general. This tape is an actual tape of him saying to the confidential informant, listen, I've talked to all my people, so insinuating that he has all these people. I can't find anything. Things on the street are dry. This tape was actually played and it was not evidence. But furthermore, it was actually argued. So after the tape was played, he then made an argument to the jury about this tape and focused on 731 and said, ladies and gentlemen, this tape shows that this was just not an accident. This tape shows his knowledge and his business acumen. So the prosecutor focused on this tape. So it may be true that there were other tapes, but this is the tape that he focused on. This is an audio tape? Yes. And some of the other tapes that were admitted were video tapes. The videos were the transaction themselves, and yes, they were admitted. There were three of them. The first one did not show the cocaine. The second two actually did show something passing that looked like cocaine. And Mr. Black, were you trial counsel? No. No. No, I was not. I didn't get involved until the appeal. Okay. Thank you. And can you give any insight, because logically you think, well, if that audio tape were particularly important or harmful to the defendant and the defendant had succeeded in getting through the trial without it being put in evidence, you would think that the defendant and defense counsel would be the first one, as soon as that tape started playing, to say, whoa, what's going on here? And if I read the record correctly, defense counsel just sat there and listened to the tape with everybody else and said nothing at all. You read the record correctly. And then that would be another issue, is that issue preserved? But even putting them inside the preservation issue, it kind of sends a sign that it wasn't really important evidence or else somebody would have been falling all over themselves. Well, also, let's be honest. It happens that trial counsel doesn't catch everything. I know when I try cases, I don't catch everything the minute. But he did file a motion for mistrial immediately after the trial. And it's often also etiquette, and I understand this is an appellate review and I know you don't look at it in that way, but it's often etiquette that trial counsel doesn't interrupt other trial counsel in the middle of their closing and that happens later. And usually that objection is seen, not always, but usually it's seen as timely. But that etiquette, at least as I understand, never applies when someone gets up and starts reading to the jury something that's not even, that was excluded or kept out of the file. Well, it's true. This is something that is harmful enough that you would have, and I agree with the court, that you would have thought that he would have immediately, but he didn't catch it. But when he caught it, which was immediately after rebuttal, he did act accordingly. Maybe he needed to check his notes on which exhibits had been admitted and which hadn't. Yes, Your Honor, I would agree with that. If the court has nothing else, I think that's the real basis of the argument. Okay, thank you. Good morning. Well, defense counsel likely didn't notice the error at the time precisely because the tape was like every other tape that had been admitted in the case. And indeed, the defense attorney himself moved the admission of two tapes that we think are almost indistinguishable in terms of the defendant talking about his drug sources, not having adequate supplies, and so forth. What do you make of the argument, though, that if that were the case, then why did the jury, and then why did he also pick that tape to discuss in his closing? Well, he discussed a number of tapes and videotapes in his closing. If you look at the sequence, he talks about exhibit 7-30, which was admitted, and then he says at that point, now I'm going to talk about exhibit 7-31, which is the tape that was not admitted. I think it's not totally clear from the record, but one problem was the numbering scheme chosen by the prosecutor for these exhibits. They're all 7- and then up to 30-something. And so the prosecutor, I think both sides typically would try to keep a list of which exhibits had been admitted, but the eye could easily fool you, I think, on 7-30, 7-31, 7-32. In the future, it might be better to just number them 8, 9, 10, 11, something like that. So it was a mistake. The judge found it was inadvertent. Indeed, the defense attorney in the district court conceded it was inadvertent. The evidence, obviously, was overwhelming. There are three, actually four videotapes of the three crack cocaine transactions. The defendant made a confession, and the surrounding tapes, according to the defense attorney, in his own closing argument, left no doubt about the defendant's guilt. There's actually a statement by the defense attorney to that effect. Mr. Lockhart, what is the name of the assistant U.S. attorney who tried this case? Richard Rose. Rose. Rose, yes. The unfortunate statement in the closing is about as bad as I can remember in my life. In the litany of improper government statements during closing, it's bad on so many different levels. What is your office doing to prevent mistakes like this from happening? We're beginning to see this in some of the other districts as well. Richard Rose. Right. A couple of things, Your Honor. First of all, the Boston U.S. Attorney's Office has put out a very lengthy do's and don'ts guide on closing arguments and rebuttal, a compendium of First Circuit decisions on that area. That's something that we circulate to our trial attorneys. And then we have monthly meetings, typically, where I rehearse the recent First Circuit decisions, including most significantly closing statement type issues. So we do that. In addition, in all of these cases, and there haven't been that many from Rhode Island in the last 15 years where closing error remarks have come up, we wait for the court to decide the case, and then we do refer it to the Justice Department, and they have a look at it. Typically, we hold off until this court has given an opinion so that they have the full context, but those cases are reviewed in Washington. Now in this case, I think the record fairly indicates that the prosecutor lost his cool, and that was very unfortunate. Sadly, no amount of training, I think, can always address those temperamental issues which sometimes arise in the heat of battle. Here, the context, of course, was that the defense had made arguments that the agents were lying in their testimony. That's no excuse for the remarks that were made, and we don't couch it in those terms. But it does at least sort of give context to the remarks. Maybe doesn't mitigate them, but provides you at least with an indication of why the prosecutor lost control at that point. The district court judge commendably jumped right on these remarks the second they were made, and even, I think, the cold transcript shows the judge used an admonishing tone with him. The prosecutor himself apologized on the spot, and I understand that you can maybe question the sincerity of his apology, but he did apologize, and he told the jury to focus on the evidence. And in a prior case, Potter, which sadly came out of our office as well some years ago, the prosecutor... More than 15, I assume. No, no, no. I handled that case on appeals about six, seven years ago. But in that case, the prosecutor also self-corrected in his argument, and the court found that to be significant. So this is a prosecutor who was essentially rebuked, I would say almost, by the judge, and who fell on the sword, said what he had done was wrong, and asked the jury to focus on the evidence. So that... Can I ask a related question that I don't think you've addressed in this response? So the related question doesn't go to the personal remark made, which you now are addressing, and I reacted the same way that Chief Judge Lynch did as to that. Mine goes to the last remark, which is don't blame them, blame me for the way this was run. So if that's a reference to the trial itself, that's one thing, and it's bad enough, and I actually think that there are additional problems with it that are not identified in the briefs. But is that conceivably a reference to the way the investigation and the whole thing was run? In fact, I took it as such, and there are a lot of good things about having Assistant U.S. Attorneys involved in these investigations, but one of the bad things that comes out about it is, and it's rarely if ever spoken of in the cases, is that almost strategically, and even if it's not strategically, it casts this pallor over the entire prosecution in terms, in actual terms of vouching. A jury sits there and says it's the entire government that believes in this, especially the person presenting the case, and I've always wondered why that isn't a bigger issue, and although it's not something that was brought to the fore here, it jumped out at me. And let me say, I agree with every one of Judge Howard's words. I thought that was even more distressing than the first comment. Okay. I took the blame me remarks, which incidentally also appeared in the Potter case, the same case had blame me remarks, the court didn't focus on them and focused on some adjacent remarks, but frankly we saw the blame me remarks in this context as being part of an inappropriate sort of over-personalization of the case, making it a contest between the defense attorney and the government attorney, you know, at least he had the courtesy to tell one agent he was lying to his face, he waited until the other agent left the room, you know, if you saw that as sort of... Actually, he didn't say if you have a problem with the case, he said if you have a problem with the investigation, that's... Yeah, it's funny, I hadn't focused on the word investigation. No, that's why we're mentioning it. I know you didn't focus on it. Well, I doubt frankly that the jury would have focused much on that one word. I think that most of the fire in the remarks came at the start, and the blame me certainly didn't help matters, and we're not excusing the blame me, but it doesn't seem likely the jury read  It seems like he was seeking an advantage in the first set of comments, and then in his apology, such as it was, he's also seeking an advantage. He's compounding his errors and personalizing the case. Well, the blame me didn't come up in the apology portion of the remarks. The blame me was part of the remarks we concede were error. The judge sustained the remarks... I considered it a token apology, and then when he's rebuked again for going down that path, he finally begins to get it. Well, you know... Absolutely, and the assistant will no doubt listen to the oral argument tape. I'll have him do that, and he'll get the full measure. We hope it's another 6 to 10 to 15 years before we have such an argument before us again. We'll do our best. Thank you.